NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
**ROSA ARIAS**                     :
*O/B/O A.D.L., A MINOR*,           :
                                   :
          **Plaintiff,**           :
                                   :    Civil Action No. 13-5064 (ES)
          v.                       :
                                   :    **OPINION**
**COMMISSIONER OF SOCIAL**         :
**SECURITY,**                      :
                                   :
          **Defendant.**           :
_____:

**SALAS, DISTRICT JUDGE**

   Before the Court is an appeal filed by Plaintiff Rosa Arias ("Arias" or "Plaintiff") on behalf of her son, minor-claimant A.D.L. Plaintiff seeks review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. Background

### A. Procedural History

On June 23, 2009, Plaintiff applied for SSI benefits on behalf of her son A.D.L., a child under the age of eighteen with an alleged disability onset date of April 30, 2007. (R.[1] at 101-06; *see also* R. at 133 (showing protective filing date of June 23, 2009)). The Commissioner denied the application on November 12, 2009, (R. at 51), and again upon reconsideration on April 21, 2010, (R. at 52).

Thereafter, an administrative hearing was held on April 20, 2011 before Administrative Law Judge ("ALJ") Donna A. Krappa, at which Plaintiff and A.D.L. appeared with counsel and testified. (R. at 26-50). On September 22, 2011, the ALJ issued a decision based on her consideration of the testimony at the hearing and her review of A.D.L.'s educational and medical records. (R. at 11; *see also* R. at 15-19). The ALJ found that "while the claimant's impairments are 'severe' as that term is defined under the Regulations, they are not so severe as to render the claimant disabled." (R. at 11). Accordingly, the ALJ concluded that "the claimant ha[d] not been disabled within the meaning of the Social Security Act beginning June 23, 2009, the date the application was filed." (*Id.*) (emphasis omitted). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on June 19, 2013. (R. at 1-6). On August 23, 2013, Plaintiff commenced this action. (D.E. No. 1, Compl.).

### B. Claimant's Educational and Medical Records

A.D.L. was born in North Bergen, New Jersey on June 22, 2001. (R. at 206). He suffers from attention deficit hyperactivity disorder ("ADHD") and a learning disorder. (R. at 11, 206).

---

[1] The Court refers to the administrative record as "R. at __" in this opinion. The administrative record is divided into seven attachments, continuously paginated, and available at D.E. No. 5.

2

*1. Claimant's Educational Records*

On November 15, 2007, A.D.L.'s first grade teacher observed that A.D.L. was "[r]estless in the 'squirmy' sense," forgot things he already learned, was "[e]xcitable" and "impulsive," failed to pay "close attention to details," made "careless mistakes in [his] schoolwork," and was "always 'on the go' . . . as if driven by a motor." (R. at 177).

On February 1, 2010, A.D.L.'s second grade teacher, Pina Salmeri, completed a teacher questionnaire provided by the Social Security Administration, Division of Disability Determination Services. (R. at 155-62). Mrs. Salmeri noted that A.D.L. "is able to work independently," but "[h]e gets redirected hourly" and "[h]is homework is constantly incomplete and with many errors." (R. at 157).

On May 4, 2011, A.D.L.'s third grade teacher, Nancy Lee, submitted a supplemental teacher questionnaire to the Division of Disability Determination Services. Ms. Lee noted that A.D.L. "has trouble focusing and staying on task" and "is impulsive and sometimes calls out." (R. at 232). However, she reported that A.D.L. takes medication in the morning and "is much better behaved after lunch." (*Id.*). She further noted that A.D.L. is classified as a Section 504[2] student at his school and receives such accommodations as extra time on exams and a separate testing environment for the NJASK (i.e. the New Jersey Assessment of Skills and Knowledge). (R. at 228).

---

[2] Section 504 of the Rehabilitation Act of 1973 "requires schools that receive federal financial assistance to 'provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction.'" *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 280 (3d Cir. 2012) (quoting *W.B. v. Matula*, 67 F.3d 484, 493 (3d Cir. 1995)).

3

*2. Claimant's Medical Records*

On September 23, 2009, the New Jersey Division of Disability Services referred A.D.L. to Dr. Ernesto L. Perdomo to administer an intellectual assessment to help define A.D.L.'s disability. (R. at 206). Dr. Perdomo reviewed the claimant's records, performed a clinical interview, and evaluated A.D.L.'s IQ using the Wechsler Intelligence Scale for Children, Fourth Edition. (*Id.*). Dr. Perdomo described A.D.L. as "a well-developed boy who appears his stated age [whose] mood and affect were very fidgety." (R. at 207). Dr. Perdomo noted that A.D.L. remained "cooperative and sociable but was easily distracted throughout the test evaluation." (*Id.*).

Dr. Perdomo reported that A.D.L. is within the 16th percentile of the population in verbal comprehension, the 75th percentile in perceptual reasoning, the 42nd percentile in working memory, and the 79th percentile in processing speed. (R. at 207-08). Additionally, Dr. Perdomo reported that A.D.L. obtained a full IQ score of 100, which places him within the 50th percentile rank of the population. (R. at 208). Dr. Perdomo found that, overall, A.D.L. "functions within the average range of intellectual functioning." (*Id.*). Dr. Perdomo concluded that A.D.L. "is a child with attention deficit[] hyperactivity disorder, combined type, and learning disabilities" who "is in special education and . . . on medication for attention deficit hyperactivity disorder." (*Id.*).

On November 10, 2009, Dr. Amy Brams, a state agency physician, evaluated A.D.L.'s functioning and concluded that his "impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings." (R. at 210). Dr. Brams determined that A.D.L. had a less than marked limitation in the following four domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself. (R. at 212-13). She found that A.D.L. had no limitation in the remaining two domains of moving about and manipulating objects and health and physical well-being. (R. at 213).

On April 19, 2010, Dr. Clara Castillo-Velez, a state agency physician, conducted another evaluation. Like Dr. Brams, she concluded that A.D.L.'s "impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings." (R. at 218). Furthermore, she found that A.D.L. had a less than marked limitation in the domains of acquiring and using information and interacting and relating with others; no limitation in the domains of moving about and manipulating objects and caring for oneself; and a marked limitation in attending and completing tasks; Dr. Castillo-Velez did not evaluate A.D.L.'s health and physical well-being. (R. at 220-21).

On June 8, 2011, Dr. Jose Fragoso, A.D.L.'s pediatrician, submitted a report of A.D.L.'s medical history. (R at 238-243). The report details that Dr. Fragoso first examined A.D.L. on October 2, 2001 and most recently examined A.D.L. on May 23, 2011. (R. at 238). Dr. Fragoso diagnosed A.D.L. with ADHD and prescribed him medication that had a good response. (R. at 239).

### C. A.D.L.'s Testimony

At the April 20, 2011 administrative hearing, A.D.L. testified that he failed the second grade and had to repeat it. (R. at 45). A.D.L. further testified that he attended third grade with Ms. Lee and was part of a "special class" in which he received extra help with reading and had teachers sit next to him while he completed his work. (R. at 40, 45-46). According to A.D.L., he was suspended from school for one day as a result of an alleged confrontation with a classmate that the principal witnessed. (R. at 42). A.D.L. testified that the confrontation was an "accident." (*Id.*). A.D.L. stated that he gets along with his sister. (R. at 43). Additionally, A.D.L. noted that he excels in sports and that his baseball "coach sa[id he is] actually the best [player]." (*Id.*).

### D. Rosa Arias's Testimony

A.D.L.'s mother, Rosa Arias, also testified at the April 20, 2011 administrative hearing. Arias stated that her son "doesn't concentrate in school and he hides under the desks." (R. at 31). Arias testified that her son was "doing badly" in school because he "can't concentrate." (R. at 34-35). According to Arias, the school told her that if A.D.L. "doesn't start paying attention, . . . he's going to have to repeat the [third] grade." (R. at 34).

Initially, Arias was in charge of distributing A.D.L.'s medication for his ADHD. (R. at 33). However, because the task became "a struggle every day," Arias arranged for the nurse at A.D.L.'s school to administer the medication. (*Id.*). Arias noted that the school was the first to identify that A.D.L. had a specific problem. (R. at 31).

When asked about A.D.L.'s behavior at home, Arias testified that A.D.L. "behaves very strangely. His sister has problems and he has problems and so they want to get at each other and it's really, really bad. He'll turn on the tv, the computer, then . . . one of the handheld games. He doesn't seem to keep his attention on anything." (R. at 33). She further noted that A.D.L. is unable to sit still for an extended period of time. (R. at 34).

Arias also stated that A.D.L.'s school contacted her about two weeks prior to the hearing, notifying her that A.D.L. "tried to choke another child." (*Id.*). According to Arias, A.D.L. engaged in aggressive behavior toward other children approximately once a month. (*Id.*).

## II.   Legal Standards

### A. Standard of Review

This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Substantial evidence is more than a "mere scintilla" and "means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance," *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. The Three-Step Process for Evaluating Whether a Child Is Disabled

Under the Social Security Act ("SSA"), the Social Security Administration is authorized to pay supplemental security income to "disabled" persons. 42 U.S.C. § 1382(a). A child, i.e., "[a]n individual under the age of 18," is "disabled" if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Regulations promulgated under the SSA set forth a three-step sequential process for determining whether a child is disabled. 20 C.F.R. § 416.924. The claimant bears the ultimate burden of establishing these three steps. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

At step one, the ALJ assesses whether the child is currently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is engaging in substantial gainful activity, then the

child is not disabled, and the ALJ's inquiry ends. *Id.* If the ALJ finds that the child is not engaging in substantial gainful activity, the ALJ proceeds to step two and determines whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Absent such an impairment or combination of impairments, the child is not disabled. *Id.* Conversely, if the child has a severe impairment or combination of impairments, the ALJ proceeds to step three. 20 C.F.R. § 416.924(a). At step three, the ALJ determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment ("listing") found in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 416.924(d). If the child has an impairment that meets, medically equals, or functionally equals a listing, the child is deemed disabled under the SSA. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments "medically equals" a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). To determine whether an impairment medically equals a listing, the ALJ considers all of the evidence in a claimant's record about the claimant's impairment(s) and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the child's impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A child has an impairment or combination of impairments that "functionally equals" a listing if he or she has either two "marked" limitations or one "extreme" limitation in the following domains: "(i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, or (vi) health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A limitation is "marked" if it "interferes seriously with [the child's]

8

ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). Such a limitation is "'more than moderate' but 'less than extreme.'" *Id.* A limitation is "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). While an extreme limitation is "more than marked," it is not necessarily the equivalent of "a total lack or loss of ability to function." *Id.* In determining whether an impairment or combination of impairments "functionally equals" a listing, the ALJ considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance. 20 C.F.R. § 416.926a(a)(1)-(3).

### III. The ALJ's Decision

The ALJ applied the three-step sequential process and determined that A.D.L. had not been disabled from the date that Plaintiff filed A.D.L.'s application. (R. at 11).

At step one, the ALJ determined that A.D.L. had not engaged in substantial gainful activity, noting that claimant is a "school-age child." (R. at 14).

At step two, the ALJ concluded that A.D.L. suffered from two severe impairments: ADHD and a learning disorder. (R. at 14).

At step three, the ALJ found that A.D.L. did "not have an impairment or combination of impairments that meets or medically equals the severity" of any of the listings in Appendix 1. (R. at 14). The ALJ explained that, "[i]n making this determination, particular attention was given to the listings in sections 112.02 and 112.11, but the specified criteria required of each listing were not demonstrated by the available medical evidence." (R. at 15). In order to establish the requisite level of severity under Listing 112.02 (Organic Mental Disorders) and Listing 112.11 (ADHD), the impairment must satisfy the paragraph A and paragraph B criteria set forth for these listings.

9

*See* 20 C.F.R. Part 404, Subpart P, App. 1, §§ 112.02, 112.11.  The ALJ explained that "[t]he evidence fails to establish the marked impairment or difficulties in two of the following: age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; or maintaining concentration, persistence or pace as required under the B criteria for children ages three to eighteen for Listings 112.02 and 112.11."  (R. at 15).

Furthermore, the ALJ found that A.D.L. did not have an impairment or combination of impairments that functionally equals a listing because he suffered from a less than marked limitation in three domains and no limitation in the remaining three domains.  (R. at 11, 15).  In particular, the ALJ found that the claimant had: "a less than marked limitation in acquiring and using information," "a less than marked limitation in attending and completing tasks," "a less than marked limitation in interacting and relating with others," "no limitation in moving about and manipulating objects," "no limitation in the ability to care for himself," and "no limitation in health and physical well-being."  (R. at 11, 19-24) (formatting altered and emphasis omitted).

**IV.   Analysis**

   **A.  Medical Equivalence**

Plaintiff challenges the ALJ's medical equivalence determination on several grounds. Plaintiff argues that the ALJ's analysis at step three was deficient because the ALJ failed to compare the combined effect of A.D.L.'s impairments with the listings, and the ALJ did not explain her decision.  (D.E. No. 8, Brief in Support of Plaintiff ("Pl. Br.") at 6-9).  Additionally, Plaintiff asserts that A.D.L. "is the medical equivalent" of the listings.  (Pl. Br. at 6).

Contrary to the Plaintiff's claims, the ALJ did in fact consider the combined effect of A.D.L.'s impairments in reaching her medical equivalence determination.  The ALJ specifically found that A.D.L. did not have "an impairment or *combination* of impairments that meets or

10

medically equals the severity of one of the listed impairments in . . . Appendix 1." (R. at 14) (emphasis added).

Moreover, the ALJ's analysis at step three was sufficient to allow for meaningful judicial review. The Third Circuit requires that the ALJ "set forth the reasons for his [or her] decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). However, the ALJ is not required "to use particular language or adhere to a particular format in conducting his [or her] analysis" as long as "there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). While the ALJ only provided a brief statement finding that A.D.L. did not medically equal any of the listings, she thoroughly discussed A.D.L.'s medical and educational records, A.D.L.'s testimony, and Plaintiff's testimony elsewhere in the opinion. (*See* R. at 16-19). Accordingly, the ALJ's decision read as a whole provides a "sufficient development of the record and explanation of findings to permit meaningful judicial review." *Jones*, 364 F.3d at 505; *see also Jaramillo*, 130 F. App'x at 561 (holding that the ALJ's decision was sufficient and allowed for meaningful judicial review because the ALJ "identified the specific Listings to which he was referring" and "discussed the evidence presented at length"). In any event, remand is not warranted because, as discussed below, there was "abundant evidence supporting the position taken by the ALJ." *See Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (holding that an "ALJ's conclusory statement in step three was harmless" where there was "abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence").

The Court finds that the ALJ properly determined that A.D.L. did not meet or medically equal a listing. To meet or medically equal Listing 112.02 or Listing 112.11, Plaintiff was required to prove that A.D.L. had marked limitations in at least two out of the following four broad areas:

11

> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
>
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
>
> d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart. P, App. 1, §§ 112.02(B)(2), 112.11(B). Substantial evidence supports the ALJ's finding that the evidence did not establish that A.D.L. had marked or extreme limitations in two of these four broad areas. Both Dr. Brams and Dr. Castillo-Velez reported that A.D.L.'s impairments, either singly or in combination, did not meet or medically equal the requirements set forth in the listings. (R. at 210, 218). Moreover, the record demonstrates that A.D.L. did not have a marked limitation in the areas of age-appropriate cognitive/communicative functioning, age-appropriate social functioning, age-appropriate personal functioning, and maintaining concentration, persistence, and pace. As to age-appropriate cognitive/communicative functioning, the evidence supports the ALJ's finding that A.D.L. did not have a marked limitation (*See* R. at 208 (finding by Dr. Perdomo that A.D.L. "functions within the average range of intellectual functioning"); R. at 220 (finding by Dr. Castillo-Velez that A.D.L. was within the average range of intellectual functioning); R. at 227 (evaluation by Ms. Lee identifying only slight problems in acquiring and using information); R. at 229 (evaluation by Ms. Lee identifying slight or no

problems in communicating and relating with others)). With regards to age-appropriate social functioning, the record indicates that A.D.L. is "cooperative and sociable"; gets "along with adults, has friends, [and] plays team sports"; and "has no significant behavioral problems." (R. at 207, 212, 220). With regards to age-appropriate personal functioning, the record indicates that A.D.L. has very slight, if any, limitations. (*See* R. at 213 (finding by Dr. Brams that A.D.L.'s "[s]elf care is age appropriate"); R. at 221 (finding by Dr. Castillo-Velez that A.D.L. had no limitation in caring for himself); R. at 231 (finding by Ms. Lee that A.D.L. had no problems with personal care)). Although A.D.L. had some difficulties with concentration, the record supports the ALJ's finding that his limitations were not marked. (*See* R. at 212, 228).

Finally, the Court rejects Plaintiff's contrary contention that A.D.L.'s impairments medically equal a listing. Although Plaintiff claims in her brief that A.D.L.'s impairments medically equal the Commissioner's listings, (*see* Pl. Br. at 6), Plaintiff has failed to meet her burden of demonstrating how his impairments satisfy any of the listings found in Appendix 1. *See Burnett*, 220 F.3d at 120 n.2 ("[T]he burden is on the claimant to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment. . . ." (citation omitted)). Simply attacking the ALJ's decision without any evidence to the contrary does not suffice.

Because the ALJ's medical equivalence determination was supported by substantial evidence and because Plaintiff has not met her burden of establishing how A.D.L.'s impairments medically equal a listing, the Court affirms the ALJ's medical equivalence finding.

### B. Dr. Fragoso's Report

Plaintiff also argues that the ALJ erred by failing to request A.D.L.'s medical records from Dr. Fragoso. (Pl. Br. at 9-10). In response, Defendant maintains that the ALJ did not fail to

13

develop the record. (D.E. No. 10, Defendant's Brief Pursuant to Local Rule 9.1, at 6-7). Specifically, Defendant asserts that the administrative record proves that the ALJ sent requests for records to Dr. Fragoso on several occasions and that Plaintiff was notified of these requests. (*Id.* at 7). Defendant also claims that the record was supplemented with Dr. Fragoso's completed two-page report and laboratory testing results. (*Id.*).

This Court agrees. The record reflects that the ALJ sent requests to Dr. Fragoso on: May 2, 2011, May 10, 2011, May 17, 2011, May 19, 2011, May 20, 2011, and May 26, 2011. (R. at 234-35). Ultimately, Dr. Fragoso completed a two-page form and returned the form along with A.D.L.'s laboratory results. (R. at 238-39, 242-43). Plaintiff's argument, therefore, has no merit.

### C. Functional Equivalence

Finally, Plaintiff argues that the ALJ erroneously concluded that A.D.L. had a less than marked limitation in: (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others. (Pl. Br. at 10-11). Having reviewed the record, the Court concludes that the ALJ's finding for each of these domains was supported by substantial evidence.

#### *1. Acquiring and Using Information*

The domain of acquiring and using information measures how well a child acquires and learns information and how well a child uses the information he or she has learned. *See* 20 C.F.R. § 416.926a(g). Examples of limited functioning in acquiring and using information include: failing to understand words about time, size, or space; having difficulty recalling important items learned in school the day before; having difficulty computing arithmetic answers or solving mathematics questions; and talking only in short, simple sentences and having difficulty explaining oneself. *See* 20 C.F.R. § 416.926a(g)(3).

The ALJ's finding that A.D.L. had a less than marked limitation in the domain of acquiring and using information was supported by substantial evidence. Ms. Lee observed that A.D.L. only had "slight" problems in seven of the ten listed activities in this domain and that he had no problems in the remaining three activities. (R. at 227). Moreover, both Dr. Brams and Dr. Castillo-Velez concluded based on their review of A.D.L.'s educational and medical records that he had a less than marked limitation in this domain. (R. at 212, 220). Plaintiff cites A.D.L.'s subtest results in the 16th percentile for verbal comprehension, 16th percentile for similarity, and 25th percentile for letter-number sequence as evidence that the ALJ's determination in the domain of acquiring and using information was erroneous. (Pl. Br. at 10). However, A.D.L.'s subtest results in the 63rd, 84th, and 95th percentiles and his overall IQ score of 100 demonstrate otherwise. (R. at 207-208; *see also* R. at 208 (statement from Dr. Perdomo indicating that A.D.L. "functions within the average range of intellectual functioning")). Accordingly, the Court upholds the ALJ's finding as supported by substantial evidence.

### 2. *Attending and Completing Tasks*

The domain of attending and completing tasks measures how well a child focuses and maintains attention and how well he or she begins, carries through, and completes activities; the domain also considers the pace at which a child performs activities as well as the ease with which he or she changes activities. *See* 20 C.F.R. § 416.926a(h). Examples of limited functioning in attending and completing tasks include: being easily startled, distracted, or overreactive to touch, movements, sounds, or sights; being slow to focus on or failing to complete activities of interest such as games or art projects; frequently becoming sidetracked from activities or frequently interrupting others; giving up on tasks; and requiring extra supervision to stay engaged in an activity. *See* 20 C.F.R. § 416.926a(h)(3).

The ALJ's finding that A.D.L. had a less than marked limitation in the domain of attending and completing tasks was supported by substantial evidence. Ms. Lee indicated that A.D.L. had an "obvious problem" with only two of the thirteen listed activities in this domain whereas he had only "slight" problems in six of the listed activities and no problems in the remaining five activities. (R. at 228). Furthermore, Dr. Brams reported that A.D.L. had a less than marked limitation in attending and completing tasks. (R. at 212). While Plaintiff challenges the ALJ's determination in this domain, she has cited no law or evidence in support of her contention that the ALJ erroneously found that A.D.L. had a less than marked limitation in attending and completing tasks.[3] Ultimately, it is Plaintiff's burden to demonstrate that A.D.L. has a marked limitation, and she has failed to meet this burden. *See Burnett,* 220 F.3d at 118. Thus, the Court upholds the ALJ's finding in the domain of attending and completing tasks as supported by substantial evidence.

*3. Interacting and Relating With Others*

The domain of interacting and relating with others measures how well a child initiates and sustains emotional connections with others, develops and uses the language of his or her community, cooperates with others, responds to criticism, and respects and takes care of the possessions of others. *See* 20 C.F.R. § 416.926a(i). Examples of limited functioning in this domain include: failing to reach out to be picked up and held by a caregiver; having no close friends or having friends that are all younger or older than the child; avoiding or withdrawing from

---

[3] Plaintiff states that A.D.L. "was left back twice for failing most subjects," (*see* Pl. Br. at 11), but she provides no record citation for this assertion. As the record indicates, and as the ALJ acknowledged, A.D.L. repeated the second grade. (*See* R. at 16, 45). However, nothing in the record indicates that A.D.L. was held back twice. Because Plaintiff has cited no evidence in support of her claim, the Court finds that her undeveloped argument has been waived. *See Perez v. Astrue*, No. 2:00-1504, 2009 WL 4796738, at *4 (D.N.J. Dec. 9, 2009) (explaining that a "throw-away argument left undeveloped is waived").

16

people that the child knows; being overly fearful or anxious about meeting new people or trying new experiences; having difficulty playing sports or games with rules; having difficulty communicating with others; and having difficulty speaking intelligibly or with adequate fluency. *See* 20 C.F.R. § 416.926a(i)(3).

The ALJ's finding that A.D.L. had a less than marked limitation in the domain of interacting and relating with others was supported by substantial evidence. Ms. Lee indicated that A.D.L. only had an "obvious problem" in one activity out of the thirteen listed activities in this domain, that it had not been necessary to implement behavior modification strategies for him, and that almost all of his speech could be comprehended. (R. at 229-30). Furthermore, both Dr. Brams and Dr. Castillo-Velez observed that A.D.L. had a less than marked limitation in interacting and relating with others. (R. at 212, 220). Dr. Brams reported that A.D.L. interacted well with adults, had friends, and played team sports, though she noted that A.D.L. did not get along with his teachers. (R. at 212). Additionally, Dr. Castillo-Velez observed that A.D.L. had "no significant behavioral problems." (R. at 220). Together, these opinions provide substantial evidence in support of the ALJ's determination that A.D.L. had a less than marked limitation in interacting and relating with others.

**V.     Conclusion**

The Court has reviewed the entire record and concludes that, for the forgoing reasons, the ALJ's decision is supported by substantial evidence. Accordingly, the Court affirms the ALJ's decision and dismisses this case.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**